McDONALD et al. v. HITCHCOCK, LLOYD & CO., Inc.

(Circuit Court of Appeals, Third Circuit. February 17, 1927.)

No. 3539.

Collision ⬥110—Tug held not liable for damages to cargo on barge, which was beached after collision, before cargo was damaged.

Where tug, after collision of barge in tow and the beaching of it to prevent sinking, offered to aid in transshipping the cargo, which offer was not accepted, *held*, tug was not liable to cargo owner for loss of part of cargo, which was admittedly undamaged at time of beaching, irrespective of its liability to barge for any negligence causing collision.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Libel in rem by the Hitchcock, Lloyd & Company, Incorporated, against the tug Columbia, and in personam against James Hughes, Jr., owner of the barge Bell. From a decree for libelant, Francis J. McDonald and another, assignees for the benefit of creditors of William J. Donaldson, claimant of the tug Columbia, appeal. Decree modified.

Howard M. Long and Saul, Ewing, Remick & Saul, all of Philadelphia, Pa., for appellants.

Willard M. Harris, of Philadelphia, Pa., for James Hughes, Jr.

Bigham, Englar & Jones, of New York City, and Acker, Manning & Brown, of Philadelphia, Pa. (Everett H. Brown, Jr., of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Hitchcock, Lloyd & Co. filed a libel in rem against the tug Columbia, and in personam against James Hughes, Jr., owner of the barge Bell. Confining ourselves to the pertinent facts, we note that on September 23, 1920, the Atlantic Gulf & Refining Company shipped on the Bell, then lying at the port of Philadelphia, 472 drums of gasoline, to be carried to the port of New York, in accord with a bill of lading signed by the duly authorized agent of the Bell and of the respondent, Mitchell, her owner, of which bill of lading Hitchcock, Lloyd & Co. became the owners.

While the Bell was proceeding on her voyage in the tow of the Columbia, the latter brought her in collision with a mud scow anchored off Pier 45, North Philadelphia. In such collision the Bell's bow was crushed in

17 F.(2d)—29

and she was in a sinking condition, whereupon her master requested the Columbia to beach her at once. This was promptly done. None of the drums floated away or were damaged by reason of the collision, or by the water entering the barge. On beaching the Bell, the tug tendered further aid in transshipping the cargo, but none was then requested or required, and so far as the care or transshipment of such cargo was concerned the tug had no further connection with the matter. We here note the responsibility of the tug to the barge for its alleged negligence in towing is not here involved.

The barge proceeded to transfer its cargo to another vessel, and recovered and forwarded 447 drums, and this libel is for the recovery and damages for the loss of the undelivered 25 drums. Two days afterwards, at the request of the barge, the Columbia was sent to tow her to Noecker's, an adjoining yard. What happened was this:

"In the course of a couple of days, about the 27th, I think it was, Capt. Clyde called up the office, and I happened to answer the phone, and he said he wanted a tugboat, and I said, 'What for?' and he said, 'To tow this barge Bell up to Noecker's yard;' and I says, 'Is she unloaded now?' and he said, 'Yes; all unloaded;' and I said, 'All right; we will tow her for you;' and we sent the tugboat over that afternoon, I think it was. I wouldn't be sure about the time, but it was somewheres around noon."

"Q. So, on the representation of Mr. Clyde that the cargo had been unloaded from this boat, you sent the tugboat over? A. Yes, sir."

During this latter towage by the Columbia, the barge turned turtle, and when she was finally put in Noecker's yard 6 additional drums were found in her bow—5 full; 1 stove in and empty. The proofs show that the barge people were told where 15 other drums were located at certain points along the river, but made no effort to get them and return to the libelant, either them or the 6 drums found in the barge. The barge's representative stated at the time that he supposed the insurers would take care of them. How these missing drums got away is not shown by the barge, but certain it is that they were all on her when she was beached and the care of her cargo assumed by her own people, and the offer of the tug declined.

What are the relative rights and obligations of the parties under such circumstances? The court below held the tug and barge jointly in fault, and divided the damages between

them. Thereupon the tug took this appeal. We are clear the libelant made out a case warranting the imposition of libelant's entire damages on the barge by virtue of its breach of the bill of lading; but we see no reason or warrant for holding that the tug should share in the payment of such damages. Whatever may be the liability of the tug to the owner of the barge for negligent towing, we are clear that the proofs in this case show that the loss of the drums was caused, not by the collision, or at that time, but wholly by the subsequent negligence of the barge after she was beached.

It is conceded that none of the drums were lost in the collision and that none floated away at that time. The loss of the cargo was wholly due to the independent and dissevered conduct of the barge people after the collision. In one sense of the word, it may be said the damage was a sequence of the collision, as no loss would have occurred, had the collision not happened; but, while it was a sequence, it was not a damage sequence, caused by such collision. The cargo was intact; the barge undertook, as against the tug, to take care of it. If, in doing so, it incurred expense which it would not have had, save for the collision, it was entitled to recover from the tug those expenses; but the simple fact is that the barge failed to properly perform its duty of saving the beached cargo, and it, and it alone, must bear the burden of its own negligence.

We accordingly hold the decree below must be modified, by discharging the libel against the tug, and adjudging the barge liable for the entire claim of the libelant. The tug will be adjudged costs in this court and in the court below against the libelant. The libelant will be adjudged against the barge all costs incurred by it, including those imposed upon it by this decree.